1999-NMSC-043

992 P.2d 879

Stanley D. HANDMAKER, M.D., Ph.D., Plaintiff–Appellee,

v.

Jane HENNEY, M.D., in her individual and official capacities, Shirley Murphy, M.D., in her individual and official capacities, Paul Roth, M.D., in his individual and official capacities, Shannan Carter, in her individual capacity, Clark Hansbarger, M.D., in his individual capacity, Leonard M. Napolitano, Ph.D., in his individual capacity, and The University of New Mexico, Defendants–Appellants.

No. 24475.

Supreme Court of New Mexico.

Nov. 17, 1999.

Paula I. Forney, Paul R. Ritzma, Santa Fe, Sutin, Thayer & Browne, P.C., Norman S. Thayer, Cerianne L. Mullins, Albuquerque, for Appellants.

Miller, Stratvert & Torgerson, P.A., Ranne B. Miller, Virginia Anderman, Albuquerque, for Appellee.

*OPINION*

SERNA, Justice.

{1} Dr. Stanley D. Handmaker, following his removal from an administrative position, filed suit against the University of New Mexico for breach of his employment contract and against numerous university officials for related claims. UNM moved for summary judgment on the ground of sovereign immunity, and the district court denied the motion. UNM then petitioned the Court of Appeals for writ of error to the district court. Upon certification from the Court of Appeals, we conclude that determinations regarding sovereign immunity from actions based on contract are generally reviewable by writ of error; however, the trial court did not err in determining that governmental immunity is inapplicable in this case due to the existence of a written contract. We also conclude that the trial court's determination that genuine issues of material fact exist regarding the breach of contract claim is not a final order and is not subject to review by writ of error. Accordingly, we affirm in part and dismiss the appeal in part.

## I. Facts

{2} Dr. Handmaker has been a faculty member at the UNM School of Medicine since 1977 and is currently a tenured professor in pediatric medicine. Like other faculty members at UNM, Dr. Handmaker's employment contract with UNM is renewed annually. In 1981, Dr. Handmaker began serving as director of the division of developmental disabilities. Dr. Handmaker's 1986–

1987 employment contract designated him as administrator of the developmental disability program, which, because there was no change in Dr. Handmaker's duties, included the position of director of the division of developmental disabilities. At that time, Dr. Handmaker's contract provided $5000 for his administrative duties.

{3} In 1990, UNM, with Dr. Handmaker's assistance, received an administrative core grant to establish the New Mexico University Affiliated Program (UAP), a nationally recognized academic center for training and research in developmental disabilities. Dr. Handmaker served as director of the UAP from its inception. Although the position of UAP director entailed additional administrative duties, Dr. Handmaker's employment contract continued to designate him as administrator of the developmental disability program and made no mention of the UAP. Dr. Handmaker's administrative salary increased to $10,000 in his 1991–1992 employment contract. His 1993–1994 employment contract again designated him as administrator of the developmental disability program and continued to provide an administrative salary of $10,000.

{4} During the 1993–1994 academic year, the School of Medicine established an internal review committee to evaluate Dr. Handmaker's performance as director of the UAP. After receiving the committee's report, the dean of the School of Medicine informed Dr. Handmaker by writing on January 21, 1994, that he had "chosen to have [Dr. Handmaker] remain as Director of the University Affiliated Program. However, [Dr. Handmaker's] directorship is under ... probationary conditions for the remainder of the calendar year 1994...." According to Dr. Handmaker, he made good faith efforts during the spring of 1994 to comply with the dean's probationary conditions. On May 25, 1994, the chair of the department of pediatrics informed Dr. Handmaker in writing that his 1994–1995 contract would include a four percent increase in salary, including the administrative salary component.

{5} Dr. Handmaker received no progress report on his performance as director of UAP and received no indication that he was

not in full compliance with the probationary conditions. However, on June 28, 1994, the chair of the department of pediatrics sent a letter to Dr. Handmaker informing him of the decision to remove him as director of the UAP. The letter informed Dr. Handmaker that his removal as director of UAP would not affect his position as associate professor of pediatrics or his position as director of the division of developmental disabilities in the department of pediatrics. The letter also stated that the removal as director of UAP would be effective July 1, 1994, even though federal regulations required thirty days notice before he could be officially removed as director of the UAP and principal investigator of the UAP core grant. Consistent with this letter, Dr. Handmaker's 1994–1995 employment contract changed his administrative title from administrator of the developmental disability program to the director of the division of developmental disabilities. Once again, the written contract made no mention of the UAP. However, Dr. Handmaker's administrative salary remained at $10,000 until his 1995–1996 employment contract, which reinstated his original $5000 administrative salary.

{6} Dr. Handmaker filed a breach of contract claim against UNM as a result of his removal as director of the UAP. Specifically, he claims that UNM's course of action violated the faculty handbook and internal policies and procedures and that removing him from his administrative position without just cause constituted a breach of his express employment contract. Dr. Handmaker also claims that UNM breached an implied covenant of good faith and fair dealing. In response to Dr. Handmaker's claims, UNM filed a motion for summary judgment in the district court. In addition to denying the merits of Dr. Handmaker's breach of contract claims, UNM asserted sovereign immunity pursuant to NMSA 1978, § 37–1–23 (1976). The district court, concluding that Dr. Handmaker raised genuine issues of material fact with respect to the breach of contract claim, denied UNM's motion. UNM then petitioned the Court of Appeals to issue a writ of error to the district court pursuant to Rule 12–503 NMRA 1999. The Court of Appeals decided that a determination of the proper criteria

for issuance of writs of error constituted a matter of substantial public importance and, therefore, certified the case to this Court. *See* NMSA 1978, § 34–5–14(C)(2) (1972).

## II. Writs of Error and the Collateral Order Doctrine

■ {7} As a general matter, this Court's appellate jurisdiction is limited to review of "any final judgment or decision, any interlocutory order or decision which practically disposes of the merits of the action, or any final order after entry of judgment which affects substantial rights." NMSA 1978, § 39–3–2 (1966). The principle of finality serves a multitude of purposes, including the prevention of piecemeal appeals and the promotion of judicial economy. *See Executive Sports Club, Inc. v. First Plaza Trust,* 1998–NMSC–008, ¶ 11, 125 N.M. 78, 957 P.2d 63. Nonetheless, the principle of finality "is neither absolute nor inflexible," *id.* ¶ 5; and is given "a practical, rather than a technical, construction" in order to promote meaningful appellate review without sacrificing judicial economy. *Kelly Inn No. 102, Inc. v. Kapnison,* 113 N.M. 231, 236, 240, 824 P.2d 1033, 1038, 1042 (1992).

{8} There is no question that the district court's denial of UNM's motion for summary judgment is an interlocutory order which fails to dispose of the merits of the action and is, therefore, not a final decision for purposes of Section 39–3–2. *See B.L. Goldberg & Assocs. v. Uptown, Inc.,* 103 N.M. 277, 278, 705 P.2d 683, 684 (1985) ("For purposes of appeal, an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible."). UNM, however, contends that an interlocutory determination of sovereign immunity for actions based on contract falls within the limited exception to the principle of finality known as the collateral order doctrine.

{9} We recently examined the collateral order doctrine and its application in New Mexico. *See Carrillo v. Rostro,* 114 N.M. 607, 612–19, 845 P.2d 130, 135–42 (1992). In *Carrillo,* we explained that the collateral order doctrine, which was initially crafted by

the United States Supreme Court in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), is a narrow exception to the principle of finality that permits appellate review of orders "implicat[ing] rights that will be irretrievably lost, absent immediate appeal and regardless of the outcome of an appeal from the final judgment." *Carrillo*, 114 N.M. at 614, 845 P.2d at 137. We noted that the collateral order doctrine has three requirements: (1) the order must finally determine the disputed question; (2) it must concern an issue that is entirely separate from the merits of the claim; and (3) there must be no effective remedy by appeal. *Id.* at 613, 845 P.2d at 136; *accord* Rule 12–503(E)(2). We concluded that the collateral order doctrine is consistent with the principle of finality expressed in Section 39–3–2 and adopted the doctrine, as well as the guidelines and criteria developed by the United States Supreme Court, to be applied procedurally in New Mexico through the writ of error. *Carrillo*, 114 N.M. at 616–17 & n. 9, 845 P.2d at 139–40 & n. 9. This case requires us to examine the applicability of the collateral order doctrine and writs of error as described in *Carrillo* to determinations of sovereign immunity under Section 37–1–23(A).

■ {10} As we explained in *Carrillo*, the collateral order doctrine is a limited exception to the principle of finality. The three criteria outlined in *Carrillo* as preconditions to invoking the collateral order doctrine are necessary to prevent the "interruption of trial court proceedings by any party claiming hardship because of postponement of review—a result that the final-judgment rule seeks to prevent." *Carrillo*, 114 N.M. at 616, 845 P.2d at 139. In fact, we noted in *Carrillo* that many courts have severely limited application of the doctrine to avert piecemeal appeals "becom[ing] the order of the day." *Id.* As a result of the potential for abuse of the doctrine, we established the writ of error as the appropriate procedural device to implement the collateral order doctrine to "ensur[e] that review under the ... doctrine occurs only when justified." *Id.* We now clarify that the three criteria for application of the doctrine should serve as a guide in deciding whether to issue a writ of error in

this context. Thus, a petitioner for writ of error must demonstrate, beyond error in the district court, that the impugned order conclusively determines a disputed issue that is entirely separate from the merits of the action and that would be effectively unreviewable from a final judgment. *See Carrillo*, 114 N.M. at 613, 845 P.2d at 136.

■ {11} We believe that determinations with respect to sovereign immunity from actions based on contract generally meet the three criteria discussed in *Carrillo*. The first two criteria are relatively straightforward in this case. Typically, determinations concerning immunity under Section 37–1–23(A) will finally resolve the issue of governmental immunity and will be separate from and collateral to the merits of the action. *Cf. Mitchell v. Forsyth*, 472 U.S. 511, 527, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (stating that a determination of qualified immunity "easily meets these requirements" and that "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim").

{12} The third criterion, whether an order would be effectively unreviewable on appeal from a final judgment, is somewhat more ambiguous. In *Allen v. Board of Education*, 106 N.M. 673, 674, 748 P.2d 516, 517 (Ct.App.1987), a defendant sought direct appeal of the trial court's denial of a motion for summary judgment based on sovereign immunity under the Tort Claims Act, NMSA 1978, § 41–4–1 to –29 (1976, as amended through 1999). The Court of Appeals addressed an argument analogous to UNM's that determinations concerning immunity under the Tort Claims Act fall within the limited collateral order exception. *Id.* at 674–75, 748 P.2d at 517–18. Although the Court of Appeals did not yet have the benefit of our opinion in *Carrillo*, the Court ultimately determined that it was unnecessary to reach the issue of the applicability of the collateral order doctrine in New Mexico. *Id.* at 675, 748 P.2d at 518. The Court of Appeals, instead, explained that "[a] distinction has been drawn between '*immunity from suit* rather than a mere defense to liability' because, 'like an absolute immunity, it is effectively lost if a case is erroneously permitted

to go to trial.'" *Id.* (quoting *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806). Relying on the language of the grant of immunity in the Tort Claims Act, which provides only "immunity from liability," NMSA 1978, § 41–4–4(A) (1999), the Court of Appeals concluded that interlocutory orders concerning immunity under Section 41–4–4(A) fail to "meet[ ] the requirements for immediate appellate review under the collateral order exception based on absolute immunity from suit." *Allen,* 106 N.M. at 675, 748 P.2d at 518.

{13} In *Carrillo,* we discussed the reasoning of the Court of Appeals in *Allen* and reiterated the significance of the distinction between immunity from suit and immunity from liability. *Carrillo,* 114 N.M. at 614, 845 P.2d at 137; *accord Carmona v. Hagerman Irrig. Co.,* 1998–NMSC–007, n. 5, 125 N.M. 59, 957 P.2d 44. We concluded in *Carrillo* that qualified immunity under 42 U.S.C. § 1983 (1994) constitutes immunity from suit because it is " 'an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law.' " *Carrillo,* 114 N.M. at 615, 845 P.2d at 138 (quoting *Mitchell,* 472 U.S. at 526, 105 S.Ct. 2806).

{14} In deciding whether determinations of immunity from actions based on contract affect "rights that will be irretrievably lost, absent immediate review and regardless of the outcome of an appeal from the final judgment, ... the essence of the collateral order doctrine," *Carrillo,* 114 N.M. at 614, 845 P.2d at 137, we rely on the reasoning of *Allen* and *Carrillo* concerning the distinction between immunity from suit and immunity from liability and the importance of legislative intent. Unlike the Legislature's grant of immunity from liability under the Tort Claims Act discussed in *Allen,* the Legislature has provided that "[g]overnmental entities are granted *immunity from actions* based on contract, except actions based on a valid written contract." Section 37–1–23(A) (emphasis added). The plain language of Section 37–1–23(A), by granting "immunity from actions" based on unwritten contracts, suggests a legislative intent to es-

tablish an entitlement on the part of the government not to stand trial or face the other burdens of litigation for actions based on unwritten contracts. *See Whitely v. New Mexico State Personnel Bd.,* 115 N.M. 308, 311, 850 P.2d 1011, 1014 (1993) (stating that "the plain language of the statute [is] the primary indicator of legislative intent"). Similarly, we have previously held "that the issue of governmental immunity [under Section 37–1–23(A) ] is jurisdictional in nature," *Spray v. City of Albuquerque,* 94 N.M. 199, 201, 608 P.2d 511, 513 (1980), and that one of the purposes of immunity for actions based on unwritten contracts rests on the difficulty of determining, without reference to a written instrument, whether a governmental agency is authorized to enter into the contract, *see Garcia v. Middle Rio Grande Conservancy Dist.,* 1996–NMSC–029, ¶ 17, 121 N.M. 728, 918 P.2d 7. We determine, then, that Section 37–1–23(A) protects the important governmental interest of avoiding the burdens of a trial on the merits and that this interest will otherwise evade meaningful appellate review absent application of the collateral order doctrine. Thus, we conclude that interlocutory determinations concerning sovereign immunity under Section 37–1–23(A), contrary to determinations of sovereign immunity under the Tort Claims Act, are generally subject to the collateral order doctrine.

### III. The Collateral Order Doctrine in Relation to the Present Matter

{15} Although the collateral order doctrine, and its procedural impetus, the writ of error, generally apply to determinations of immunity under Section 37–1–23(A), our review by writ of error is necessarily limited by the nature of immunity established by the Legislature. Governmental immunity under Section 37–1–23(A) is limited to unwritten contracts and does not apply to a contract action against the government that is based on a valid written contract. As a result, a governmental defendant's motion for summary judgment in an action based on contract may involve two separate questions: (1) whether the action is based on a written contract or is, instead, subject to governmental immunity under Section 37–1–23(A); and

(2) whether the plaintiff has raised genuine issues of material fact with respect to the claim of breach of contract. The former, as a collateral order affecting interests that would be irretrievably lost if the case proceeded to trial, is subject to review by writ of error; the latter, a matter going to the heart of a breach of contract claim and representing a "step toward final disposition of the merits of the case," *Cohen*, 337 U.S. at 546, 69 S.Ct. 1221, rather than a final decision on a collateral issue, is not. *See id.* at 546, 69 S.Ct. 1221 (allowing immediate appeal because "the matters embraced in the decision appealed from are not of such an interlocutory nature as to affect, or to be affected by, decision of the merits of this case"); *cf. Mitchell*, 472 U.S. at 530, 105 S.Ct. 2806 (holding "that a district court's denial of a claim of qualified immunity, *to the extent that it turns on an issue of law,* is an appealable 'final decision' " (emphasis added)). Determinations at the summary judgment stage as to whether genuine issues of material fact exist on a claim of breach of contract do not require immediate appeal. *See Richardson–Merrell, Inc. v. Koller ex rel. Koller*, 472 U.S. 424, 430–31, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985) ("The collateral order doctrine is a 'narrow exception,' *Firestone [Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) ], whose reach is limited to trial court orders affecting rights that would be irretrievably lost in the absence of an immediate appeal."). *See generally* 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3914.10, at 662 (1992) (stating that, under analogous circumstances, "[o]fficial defendants are in the same position as any other defendants who, under the final judgment rule, must bear the burdens of trial following a mistaken refusal to dismiss or grant summary judgment").

█ {16} The United States Supreme Court, in a unanimous opinion, recently reached a similar conclusion with respect to claims of qualified immunity. *See Johnson v. Jones*, 515 U.S. 304, 313–19, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *see also Behrens v.*

*Pelletier*, 516 U.S. 299, 312–13, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (discussing *Johnson*). In *Johnson*, a governmental official being sued under 42 U.S.C. § 1983 filed a motion for summary judgment on the ground that he did not participate in the conduct forming the basis of the claim. 515 U.S. at 307–08, 115 S.Ct. 2151. The trial court denied the motion, finding that sufficient evidence supported the plaintiff's theory, and the defendant sought immediate appeal. *Id.* at 308, 115 S.Ct. 2151. The United States Supreme Court concluded that the collateral order doctrine did not apply because the defendant's arguments were inseparable from the merits of the claim. *Id.* at 314, 115 S.Ct. 2151. The Court also concluded that "considerations of delay, comparative expertise of trial and appellate courts, and wise use of appellate resources argue in favor of limiting interlocutory appeals of 'qualified immunity' matters to cases presenting more abstract issues of law." *Id.* at 317, 115 S.Ct. 2151. We believe these same considerations apply to determinations beyond issues of immunity in actions against a governmental defendant based on contract.[1] Thus, even though determinations of sovereign immunity under Section 37–1–23(A) are generally subject to the collateral order doctrine, we believe that the limited nature of immunity granted in Section 37–1–23(A) requires us to scrutinize the specific factual context surrounding such determinations in order to determine whether issuance of a writ of error would be appropriate.

## A. The Trial Court's Determination Regarding Sovereign Immunity

█ {17} In this case, Dr. Handmaker had written employment contracts with UNM. His breach of contract claim centers around the terms of employment under those contracts, including the procedure and grounds necessary for termination from an administrative position. UNM concedes that Dr. Handmaker's 1993–1994 written contract, which designated him as administrator of the developmental disabilities program and in-

---

1. We reiterate, however, that we are not bound by the United States Supreme Court's interpretation of the collateral order doctrine, and we cite to *Johnson* only for its persuasive, rather than binding, value. *See Carrillo*, 114 N.M. at 617 n. 9, 845 P.2d at 140 n. 9.

gment, we determine that this action is based on a written contract. Thus, applying Section 37–1–23(A), we conclude that the trial court did not err in denying UNM's motion for summary judgment on the ground of sovereign immunity. *Cf. Carrillo*, 114 N.M. at 622, 845 P.2d at 145 (concluding that the trial court did not err in denying a motion for summary judgment on the ground of qualified immunity).

## B. The Trial Court's Determination that Genuine Issues of Material Fact Exist

{18} UNM also claims as a basis for issuing a writ of error that the trial court improperly determined that Dr. Handmaker raised genuine issues of material fact regarding his claim that UNM breached the employment contract. "Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ciup v. Chevron U.S.A., Inc.*, 1996–NMSC–062, ¶ 7, 122 N.M. 537, 928 P.2d 263. On review, "we examine the whole record for any evidence that places a genuine issue of material fact in dispute," *Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶ 15, 123 N.M. 752, 945 P.2d 970, and we view the facts in a light most favorable to the party opposing the motion and draw all reasonable inferences in support of a trial on the merits, *see Silverman v. Progressive Broad., Inc.*, 1998–NMCA–107, ¶ 7, 125 N.M. 500, 964 P.2d 61.

{19} In reviewing UNM's argument, we first note that the face of the 1994–1995 contract is ambiguous concerning Dr. Handmaker's administrative responsibilities for two reasons: (1) neither the 1993–1994 nor the 1994–1995 contract made any mention of the UAP, yet UNM conceded that directorship of the UAP was included in the 1993–1994 contract; and (2) the contract contained an apparent contradiction between the change in administrative designation, from administrator of the developmental disability program to director of the division of developmental disabilities, and the failure to modify Dr. Handmaker's administrative salary from his 1993–1994 contract. *See Mark V. Inc. v. Mellekas*, 114 N.M. 778, 845 P.2d 1232 (1993) ("An ambiguity exists in an agreement when the parties' expressions of mutual assent lack clarity. The question whether an agreement contains an ambiguity is a matter of law to be decided by the trial court." (citation omitted)). Nevertheless, in light of the express written notice Dr. Handmaker received of his termination as director of the UAP prior to signing the 1994–1995 contract, we are skeptical that Dr. Handmaker could have raised a genuine issue of material fact that the administrative designation in the 1994–1995 contract was intended to include his directorship of the UAP. *See C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 817 P.2d 238 (1991) ("[I]n determining whether a term or expression to which the parties have agreed is unclear, a court may hear evidence of the circumstances surrounding the making of the contract and of any relevant usage of trade, course of dealing, and course of performance." (footnote omitted)). Additionally, UNM correctly asserts that in New Mexico there is a presumption that termination from employment is at will unless otherwise agreed upon by the parties, *Garcia*, 1996–NMSC–029, ¶ 10, 121 N.M. 728, 918 P.2d 7, and UNM thus claims that, because only his position as associate professor was protected by tenure, Dr. Handmaker's administrative positions were terminable at will.[2]

---

2. Dr. Handmaker alleges that UNM's written policies and procedures and written statements made to him by UNM officials constitute an implied contractual term of termination for good cause only. UNM argues that *Hydro Conduit Corp. v. Kemble*, 110 N.M. 173, 179, 793 P.2d 855, 861 (1990) and *Trujillo v. Gonzales*, 106 N.M. 620, 621, 747 P.2d 915, 916 (1987) support the proposition that Section 37–1–23(A) supplies immunity from implied contracts, that Dr. Handmaker's claim, in order to survive summary judgment, must be supported by explicit language appearing in the contract, and that Dr. Handmaker cannot rely on oral representations by university officials concerning his contract. We believe that UNM misconstrues these cases and

{20} However, we believe that these assertions are not properly before this Court on petition for writ of error. UNM's claims require the interpretation of a written contract and are unrelated to its assertion of sovereign immunity. *Cf.* 15A Wright et al., *supra*, § 3914.10, at 662 ("One possible approach to ... cases [involving qualified immunity in which the defendant denies committing the acts that form the basis of the claim] is to conclude that a factual argument of noninvolvement presents issues that intrinsically do not involve official immunity."). The true issue raised in UNM's motion for summary judgment was not whether a written contract with a governmental agency existed but, instead, the meaning of the terms and conditions of an existing written contract between UNM and Dr. Handmaker, specifically the terms of removal from administrative positions. *Cf. Johnson*, 515 U.S. at 318, 115 S.Ct. 2151 (suggesting that appellate courts will be cautious to limit appellate review "in a case where the appealable issue appears simply a means to lead the court to review the underlying factual matter"). UNM's reliance on the presumption of at-will employment for administrative positions and extrinsic evidence to prove that the 1994–1995 contract withdrew Dr. Handmaker from director of the UAP only serves to emphasize the extent to which UNM's arguments are intertwined with the merits of Dr. Handmaker's breach of contract claim. *Cf. Mitchell,*

472 U.S. at 528, 105 S.Ct. 2806 ("An appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim."). The trial court's order denying UNM's motion for summary judgment entails issues involving the ultimate facts necessary for disposition of the merits of the action. *Cf. Allen*, 106 N.M. at 674–75, 748 P.2d at 517–18 (holding that, because the issue of immunity raised in the interlocutory order "requires a determination of the very ingredients of the causes of action themselves," it "fail[ed] to meet the *Cohen* requirements for appellate review under the collateral order exception to the final judgment rule"). Further, the trial court's order does not finally determine these issues; the trial court concluded only that Dr. Handmaker had raised genuine issues of material fact and did not conclude that UNM had in fact breached its contract. *Cf. Carrillo*, 114 N.M. at 622–23, 845 P.2d at 145–46 ("[A]n adjudication [denying a motion for summary judgment based on qualified immunity] does not determine that defendants *are liable....* Establishing the defendants' liability or nonliability must await the outcome of the trial that a denial of summary judgment entails.").

{21} As with most denials of motions for summary judgment, this portion of the district court's order is more appropriately left to further examination by the district court

that *Hydro Conduit*, in which we recognized immunity under Section 37–1–23(A) for claims of quantum meruit, 110 N.M. at 179, 793 P.2d at 861, and *Trujillo*, in which we concluded that oral promises that are inconsistent with an unambiguous written contract with a governmental agency are unenforceable under Section 37–1–23(A), 106 N.M. at 621, 747 P.2d at 917, are inapposite in the present matter. Instead, we believe that this case is better informed by *Garcia*, in which we held that a personnel policy constituted an implied-in-fact term of an employment contract that was not subject to immunity under Section 37–1–23(A), 1996–NMSC–029, ¶ 19, 121 N.M. 728, 918 P.2d 7. As we stated above, Dr. Handmaker's claim relies on an ambiguous written contract, and he argues that representations made by UNM provide context for interpreting the contract. *See Garcia*, 1996–NMSC–029, ¶ 15, 121 N.M. 728, 918 P.2d 7 ("[A]n employment contract may be implied in fact from a term exhibited in writing in, for example, a personnel policy manual." (footnote

omitted)); *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 672, 857 P.2d 776, 783 (1993) ("[A]n implied-in-fact contract term limiting the employer's right to terminate at will may modify the underlying employment relationship."); *see also Trujillo*, 106 N.M. at 621, 747 P.2d at 916 ("While parties may leave portions of written contracts to oral expression, under such circumstances oral expressions are legally significant *only if they are not contradictory* and have some effect upon interpretation, application and legal operation of the written portion."). The question, then, on summary judgment is whether Dr. Handmaker raised a genuine issue of material fact that UNM's representations were *"sufficiently explicit* to give rise to reasonable expectations of termination [from his administrative position] for good cause only." *Hartbarger*, 115 N.M. at 672, 857 P.2d at 783. Given the procedural disposition of this case, however, it is unnecessary for us to decide this issue in the present appeal.

and a trial on the merits and can be reviewed more effectively on appeal from final judgment following a more complete development of the facts. We reject UNM's contention that an immediate appeal on these issues is necessary to minimize the impact of a trial on public funds. *Cf. Richardson–Merrell Inc.,* 472 U.S. at 436, 105 S.Ct. 2757 ("[T]he possibility that a ruling may be erroneous and may impose additional litigation expense is not sufficient to set aside the finality requirement...."). As a policy matter, we believe that immediate appellate review of these issues would cause undue delay in trial court proceedings, especially considering the policy in New Mexico disfavoring summary judgment and the standard of review applicable in such matters. *See Pharmaseal Lab., Inc. v. Goffe,* 90 N.M. 753, 756, 568 P.2d 589, 592 (1977) ("Summary judgment is a drastic remedy to be used with great caution."). *See generally Richardson–Merrell Inc.,* 472 U.S. at 434, 105 S.Ct. 2757 ("One purpose of the final judgment rule ... is to avoid the delay that inherently accompanies time-consuming interlocutory appeals."). Therefore, we conclude that, to the extent that the trial court's order resolved matters beyond immunity under Section 37–1–23(A), it would be inappropriate to apply the collateral order doctrine, and we dismiss UNM's appeal from this portion of the trial court's order. *Cf. Ram v. Rubin,* 118 F.3d 1306, 1308 (9th Cir.1997) ("To the extent that [the defendant's] appeal requires the determination of a fact-related dispute, namely whether the evidence in the pretrial record is sufficient to show a genuine issue of fact for trial, we lack jurisdiction."), *cert. denied,* 522 U.S. 1045, 118 S.Ct. 686, 139 L.Ed.2d 633 (1998), *Stella v. Kelley,* 63 F.3d 71, 74 (1st Cir.1995) ("[A] summary judgment order which determines that the pretrial record sets forth a genuine issue of fact ... is not reviewable on demand.").

## IV. Conclusion

{22}  As a general matter, the limited exception to the rule of finality known as the collateral order doctrine applies to district court determinations regarding governmental immunity under Section 37–1–23(A), and such determinations are subject to review by writ of error. In this case, the trial court's denial of UNM's motion for summary judgment determined two issues: (1) Section 37–1–23(A) does not provide governmental immunity in this case; and (2) Dr. Handmaker has raised genuine issues of material fact with respect to his breach of contract claim. With respect to the first determination, we conclude that the trial court did not err because Dr. Handmaker's claim is based on a written contract. With respect to the second determination, we conclude that it is not an appropriate subject of review by writ of error, and we decline to address, as a premature appeal, whether the trial court improperly decided that genuine issues of material fact exist. We conclude that the trial court properly denied UNM's claim of governmental immunity under Section 37–1–23(A), and we apply the finality of judgments rule to the remainder of UNM's claims on appeal.

{23}  **IT IS SO ORDERED.**

MINZNER, C.J., and BACA, J., concur.

FRANCHINI, J. (concurring in part and dissenting in part).

MAES, J. (concurring in part and dissenting in part).

FRANCHINI, Justice. (Special Concurrence and Dissent).

{24}  **I CONCUR** with the opinion that this matter is reviewable under *Carrillo v. Rostro,* 114 N.M. 607, 845 P.2d 130 (1992), because it concerns collateral determinations regarding governmental immunity under Section 37–1–23(A) and is reviewable by this Court by writ of error.

{25}  However, **I DISSENT** from the analysis and the result reached in the opinion for the following reasons:

{26}  I do not agree with the majority that Doctor Handmaker's contracts were ambiguous. Dr. Handmaker had a written contract for the *years 1993–1994,* which *ended* on *June 30, 1994.* That written contract had *no provision for renewal* of the administrative position as head of UAP (University of Administrative Program). Further, the contract specified that the administrative services could be terminated during the contract

with a possible salary reduction. The UNM Faculty Handbook contained nothing to the contrary.

{27} The Doctor's contract for 1994–1995 *does not* include the directorship of UAP. He was given notice of this on June 28, 1994. He was effectively terminated as UAP director on July 1, 1994, at which time he was an *at will employee* regarding the directorship.

{28} Therefore, since there was no *written contract* on July 1, 1994, the Doctor cannot sue UNM for breach of contract because of Section 37–1–23(A), the Sovereign of Immunity Statute. UNM had the right, and in fact did not choose, to renew the Doctor's contract for the directorship of UAP after June 30, 1994. The amended complaint does not bring the case under the jurisdiction of the District Court and therefore does not moot it.

{29} The majority's reliance on the case of *Garcia v. Middle Rio Grande Conservancy District,* 121 N.M. 728, 918 P.2d 7 (1996) is misplaced. *Garcia* held that a written personal policy manual constituted an implied-in-fact term of employment contract and was not subject to immunity under Section 37–1–23–A. Here, there are no provisions in the Faculty Handbook, like those present in *Garcia,* that specify particular administrative duties or personnel policies which might support a written contract claim against UNM by Dr. Handmaker to continue as director of UAP.

{30} In my opinion, this case is controlled by *Hydro Conduit Corp. v. Kemble,* 110 N.M. 173, 176, 793 P.2d 855, 861 (1990), and *Trujillo v. Gonzales,* 106 N.M. 620, 621, 747 P.2d 915, 916 (1987). These cases both support the proposition that Section 37–1–23(A) supplies immunity from implied contracts and that the Doctor's claim, in order to survive summary judgment, must be supported by explicit language appearing in the contract. No such explicit language is present here. Further, Dr. Handmaker cannot rely on representations by University officials concerning the contract. *See id.*

{31} Claims against other people at UNM do not prevent us from issuing a writ of error. I believe this is the case even though there may be issues of fact to be determined *as to those individuals.* These issues were stated by the trial court as its reason for denying UNM a summary judgment. For the reasons I have stated, I believe this was error.

{32} I would remand this case to the District Court with instructions to enter a Summary Judgment for UNM.

{33} The majority holding otherwise, I respectfully dissent.

MAES, J., concurs.