This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37163**

**LINDSAY O'BRIEN QUARRIE,**

　　Plaintiff-Appellant,

v.

**BOARD OF REGENTS OF THE NEW
MEXICO INSTITUTE OF MINING
AND TECHNOLOGY,**

　　Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SOCORRO COUNTY
Matthew G. Reynolds, District Judge**

Lindsay O'Brien Quarrie
Socorro, NM

Pro Se Appellant

Conklin Woodcock & Ziegler, P.C.
Alisa Wigley-DeLara
Darin A. Childers
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}**　　Plaintiff Lindsay O'Brien Quarrie sued Defendant the Board of Regents of the New Mexico Institute of Mining and Technology for breach of contract and punitive damages. The district court dismissed Plaintiff's claim with prejudice for failure to state a claim upon which relief may be granted, finding it barred by governmental immunity, pursuant to NMSA 1978, Section 37-1-23(A) (1976). Plaintiff contends the district court

erred because it failed to find there was an implied-in-fact contract between the parties sufficient to defeat immunity.[1] We affirm.

**BACKGROUND**

**{2}**     The following facts were elicited from Plaintiff's amended complaint and the exhibits attached thereto. From 2004 to 2012, Plaintiff was enrolled in Defendant's doctoral program, seeking to obtain a Ph.D. in Materials Engineering. During this period, Plaintiff made progress toward obtaining his degree, but also experienced conflict with members of his doctoral committee. This conflict came to a head one week prior to Plaintiff's "planned dissertation defense," a required element of the degree. Although Plaintiff passed the defense, members of his committee expressed concern that he was deficient in his knowledge of the discipline and that he was not yet ready to defend his dissertation. According to Defendant, Plaintiff responded to these statements by issuing threats against the members of his committee. As a consequence, Plaintiff was immediately terminated from the doctoral program. Plaintiff denied making any threats and appealed his termination but was unsuccessful in his efforts to be reinstated.

**{3}**     Plaintiff filed a civil rights complaint against Defendant with the U.S. Department of Education and the Office of Civil Rights and, eventually, filed suit in federal court. The suit was dismissed with prejudice by the federal district court, but in an effort to forestall additional litigation, Defendant proposed a settlement whereby Plaintiff would agree to forgo a civil action against Defendant in exchange for $6000 and Defendant's promise to remove all references to Plaintiff's termination from his academic file. As part of the agreement, Plaintiff also agreed never to apply for readmission to Defendant's institution. The parties executed the agreement on October 8, 2015.

**{4}**     According to Plaintiff, Defendant immediately breached the settlement agreement because it failed to remove from his academic records a letter from the Defendant's Dean of Graduate Studies stating that Plaintiff's enrollment had been terminated. Believing himself no longer bound by the settlement, Plaintiff applied for readmission to Defendant's doctoral program in December 2016 by completing and submitting an online application and paying a "processing fee" of $45. Having received neither a decision on his application nor a refund of his fee by the fall of 2017, Plaintiff filed suit against Defendant in state court, alleging breach of contract and seeking punitive damages.

**{5}**     Defendant moved to dismiss the complaint pursuant to Rule 1-012(B)(6) NMRA, arguing that the action was barred by the priority jurisdiction doctrine and governmental immunity precluding suits based on unwritten contracts. *See* Section 37-1-23(A) (granting governmental entities immunity from actions based on contract, other than actions based on valid written contracts). The district court granted the motion, finding

---

1Plaintiff also asks us to find that "priority jurisdiction does not apply to like lawsuits concurrently pending in federal and state courts[.]" Because the district court's dismissal of Plaintiff's claim was predicated solely on governmental immunity from suit on contract claims, and because the court expressly declined to rule on the question of priority jurisdiction, that issue is not properly before us.

Plaintiff was barred by the immunity statute from pursuing his complaint, but "mak[ing] no ruling with regards to the priority jurisdiction doctrine." This appeal followed.

**DISCUSSION**

**{6}**     We review a district court's decision to dismiss a case under Rule 1-012(B)(6) de novo. *Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917. This includes dismissals based on a finding of governmental immunity. *See Campos de Suenos, Ltd. v. Cty. of Bernalillo*, 2001-NMCA-043, ¶ 10, 130 N.M. 563, 28 P.3d 1104 (stating that "the application of the facts of a case to an assertion of immunity, is a legal question that we review de novo"). A motion to dismiss for failure to state a claim "tests the legal sufficiency of the complaint, not the facts that support it." *Am. Fed'n of State, Cty. & Mun. Emps. Council 18 v. State*, 2013-NMCA-106, ¶ 6, 314 P.3d 674 (internal quotation marks and citation omitted). Accordingly, we accept all well-pleaded allegations of the complaint as true and resolve all doubts in favor of the sufficiency of the complaint.[2] *See Delfino*, 2011-NMSC-015, ¶ 12.

**{7}**     Plaintiff argues the district court erred in granting Defendant's motion to dismiss because "the Ph[.]D[.] application process between him and [Defendant] is an implied contract and . . . in the State of New Mexico implied contracts can meet the requirements for waiving sovereign immunity[.]" Defendant contends we should affirm the district court's dismissal because Plaintiff's complaint does not allege the existence of a writing sufficient to defeat governmental immunity, and Plaintiff "fails to direct this Court to any written contract between the parties (including any purported implied-in-fact contract) that could support his claim."

**{8}**     Section 37-1-23(A) provides that "[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract." Although Section 37-1-23(A) bears some resemblance to the statute of frauds, it is not a mere defense to liability but instead an entire bar to suit, relieving the defendant from the burden of defending a trial on the merits. *Campos de Suenos*, 2001-NMCA-043, ¶¶ 12-15. The purpose of the statute is "to protect the public purse and to require that parties seeking recovery from the state for benefits conferred on it have 'valid written contracts,' which presumably will have been carefully negotiated[.]" *Hydro Conduit Corp. v. Kemble*, 1990-NMSC-061, ¶ 23, 110 N.M. 173, 793 P.2d 855. Additionally, encouraging parties who contract with the government to do so in writing "facilitate[s]

---

2Throughout this case, Plaintiff has referenced exhibits attached to the amended complaint. We note that neither party argues that the district court erred in deciding the motion under the standard for a motion to dismiss as opposed to a motion for summary judgment. *See* Rule 1-012  (stating that if "matters outside the pleading are presented to and not excluded by the court, the [Rule 1-012(B)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 1-056 NMRA."). *See State ex rel. Human Servs. Dep't v. Staples*, *1982-NMSC-099, ¶¶ 3, 5, 98 N.M. 540, 650 P.2d 824* (noting that "courts risk overlooking important facts or legal considerations when they take it upon themselves to raise, argue, and decide legal questions overlooked by the lawyers who tailor the case to fit within their legal theories." (alteration, internal quotation marks, and citation omitted)). Thus, we apply the standard of review for a Rule 1-012(B)(6) motion.

clarity in contractual terms and obligations." *Cockrell v. Bd. of Regents of N.M. State Univ.*, 2002-NMSC-009, ¶ 22, 132 N.M. 156, 45 P.3d 876.

**{9}** Nonetheless, and in spite of the plain language of Section 37-1-23(A), Plaintiff's claim for breach of contract does not assert the existence of a writing memorializing a contract between the parties. Instead, Plaintiff claims that when Defendant e-mailed him a receipt for his payment of the processing fee, this was a "representation" to Plaintiff that gave rise to an implied-in-fact contract that is sufficient to defeat immunity. To succeed on his claim, Plaintiff must demonstrate both that an implied-in-fact contract existed between the parties and that such a contract is sufficient to defeat immunity in these circumstances. *See Garcia v. Middle Rio Grande Conserv. Dist.*, 1996-NMSC-029, ¶¶ 9, 15, 121 N.M. 728, 918 P.2d 7 (stating "[f]irst we address whether [the plaintiff and the defendant] entered into an employment contract" and "[n]ext, we address whether Section 37-1-23(A) . . . incorporates an implied employment contract that includes written terms as set forth in a personnel policy"). We conclude he has demonstrated neither.

**{10}** First, Plaintiff has failed to adequately plead the existence of an implied-in-fact contract. "Implied-in-fact contracts are founded upon a meeting of minds, which, although not embodied in an express contract, is inferred . . . from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Orion Tech. Res., LLC v. Los Alamos Nat'l Sec., LLC*, 2012-NMCA-097, ¶ 9, 287 P.3d 967 (internal quotation marks and citation omitted). An implied-in-fact contract may be " 'based on the parties' mutual assent as manifested by their conduct." *Garcia*, 1996-NMSC-029, ¶ 15, n.1 (internal quotation marks and citation omitted). According to Plaintiff's complaint, an implied-in-fact contract between the parties was constituted upon Plaintiff's submission of his application and payment of the $45 processing fee. Although on its face this allegation does not suggest mutuality (because it fails to indicate any conduct on the part of Defendant signifying assent), on appeal, Plaintiff adds that the confirmation receipt, which lists the date and time of receipt of payment, a notification email address associated with Defendant, a confirmation number, and the words "Thank you for your payment," constituted the necessary "assenting conduct" giving rise to the implied contract.

**{11}** We disagree. "Implied contract claims require proof that the promise or representation [is] definite, specific, or explicit so that there is a reasonable expectation of contractual rights." *Avalos v. Bd. of Regents of N.M. State Univ.,* 2017-NMCA-082, ¶ 18, 406 P.3d 551 (internal quotation marks and citation omitted). Non-promissory, general language that fails to establish an obligation is insufficiently "definite, specific, or explicit" to create such an expectation. *Id.* Plaintiff has pointed to no promissory language of any kind from Defendant, either in the confirmation receipt or in any of the instructions accompanying the online application.[3] To the contrary, the sole writing

---

3Plaintiff alleges that a promise by Defendant to act on his application is "strongly implied" by (1) "longstanding practice" at Defendant's institution and other New Mexico institutions of higher learning; (2) Defendant's issuance of a receipt for payment; and (3) the fact that "when an entity . . . accepts a payment for a service and/or goods, that acceptance indicates that the entity has agreed to provide that service or deliver those goods in the expected

described by Plaintiff—the confirmation receipt—contains only general language confirming receipt of the processing fee; there is no language promising additional action by Defendant. Nor does Plaintiff's complaint include any allegations about the content of the online application that might give rise to a reasonable expectation that Defendant had agreed to obligate itself. *See generally Espinosa v. Town of Taos*, 1995-NMSC-070, ¶ 15, 120 N.M. 680, 905 P.2d 718 (declining to find a valid written contract giving rise to obligation for liability based on application for admission to a day camp program).

**{12}** Even if we were to agree with Plaintiff that the parties' conduct gave rise to an implied-in-fact contract, his breach of contract claim would still be barred by Section 37-1-23(A) because an implied-in-fact contract unsupported by a writing is not a "valid written contract" under the statute. *See Eaton Martinez & Hart, P.C. v. Univ. of N.M. Hosp.*, 1997-NMSC-015, ¶ 9, 123 N.M. 76, 934 P.2d 270 (stating that "[t]he Legislature has imposed a statutory requirement that a contract claim must be supported by a writing in order for it to be enforceable against the [s]tate"); *see also Wills v. Bd. of Regents of Univ. of N.M.*, 2015-NMCA-105, ¶ 25, 357 P.3d 453 (stating that, even where the parties' conduct gives rise to an implied employment contract, without a showing of written terms, immunity bars contract claim against governmental entity). Notwithstanding these authorities, Plaintiff contends that *Garcia* supports his position that, so long as an implied-in-fact contract identifies its terms and is not subject to disputed validity, it is sufficient to waive governmental immunity. This misstates *Garcia* and New Mexico law.

**{13}** In *Garcia*, we considered whether an implied-in-fact employment contract, supported in writing by a detailed and comprehensive personnel manual, could support an action against a governmental entity in spite of Section 37-1-23(A). 1996-NMSC-029 ¶ 14. We specifically focused our inquiry on whether immunity under the statute could be waived by an "implied employment contract that includes written terms as set forth in a personnel policy[.]" *Id.* As we observed in *Campos de Suenos*, our analysis in *Garcia* was "deeply rooted in employment law." We recognized the unique role that employment manuals play in establishing the contours of the employment contract and in tempering the harshness of the common law doctrine of at will employment. 2001-NMCA-043, ¶¶ 24-28. Our holding in *Garcia* was grounded in our assessment that the comprehensive personnel manual at issue so shaped the employer/employee relationship, and was so specific in its terms, that it obviated any concern that the terms of the contract might be "long forgotten" in the enormous volume of government

---

amount of time." Plaintiff has failed to identify any authorities in support of his assertion that a promise inferred from institutional or society-wide practices may give rise to an implied-in-fact contract and we therefore assume none exist. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). We also note that such a rule would run contrary to existing New Mexico law requiring proof of a "definite, specific, or explicit" representation in order to find an enforceable implied-in-fact contract and would render the "valid written contract" requirement of Section 37-1-23(A) a nullity. *See Avalos*, 2017-NMCA-082, ¶ 18 (requiring implied contract claims to have proof of definite, specific, or explicit promises); *see also Campos de Suenos*, 2001-NMCA-043, ¶ 18 (stating that allowing a defendant to "cobble together" a contract undermines the requirement of a valid written contract under Section 37-1-23(A)).

contracts or that the defendant might not have been authorized to execute it. *Garcia*, 1996-NMSC-029, ¶¶ 16-17.

**{14}** Plaintiff asks us to extend this holding to implied contracts arising outside of the employment context *and* unsupported by comprehensive written terms.[4] Neither *Garcia* nor any other New Mexico authority support such an extension. *See Garcia*, 1996-NMSC-029, ¶ 20 ("*On the facts of this case*, and in view of the legitimate policy goals [of the statute], we hold that *this implied employment contract, which includes a written personnel policy*, constitutes a 'valid written contract' required to waive governmental immunity[.]"); *see also Wills*, 2015-NMCA-105, ¶ 25 (clarifying that "*Garcia* stands for the proposition that where an employment contract may be implied from 'written terms' it may be considered a 'valid written contract' " and declining to find an implied employment contract unsupported by written terms sufficient to waive immunity); *Campos de Suenos*, 2001-NMCA-043, ¶ 28 (declining to extend the application of *Garcia* beyond the employment context). In fact, we have rejected such invitations in cases alleging much more fulsome supportive writings than are alleged here. *See Campos de Suenos*, 2001-NMCA-043, ¶¶ 18, 28 (holding that an implied-in-fact contract supported by "a slew of partial writings" was insufficient to defeat governmental immunity); *see also Avalos*, 2017-NMCA-082, ¶ 18 (holding that a letter offering admission to an academic program, a student handbook, and a handbook acknowledgment form did not, taken together, constitute an implied contract that would waive immunity under Section 37-1-23(A)).

**{15}** In enacting Section 37-1-23(A), the Legislature demanded formality in the execution of contracts entered with governmental entities and placed the risk of loss on "those seeking promises from the government[.]" *Univ. of N.M. Police Officer's Ass'n v. Univ. of N.M.,* 2005-NMSC-030, ¶ 21, 138 N.M. 360, 120 P.3d 442. Were we to adopt Plaintiff's interpretation of the statute—that virtually any implied contract, with or without a supportive writing memorializing its terms, may be deemed a "valid written contract" for purposes of defeating immunity—we would have to disregard both the plain language of Section 37-1-23(A) and the Legislature's intent in enacting it. Accordingly, we hold that the district court did not err in granting Defendant's motion to dismiss pursuant to Rule 1-012(B)(6).

**CONCLUSION**

**{16}** For the foregoing reasons, we affirm.

**{17} IT IS SO ORDERED.**

---

4In his Reply Brief, Plaintiff contends that the written terms of the asserted implied-in-fact contract can be found in the confirmation receipt and on Defendant's website. But the information Plaintiff asks us to infer from these writings does not include the terms of the agreement forming the basis of Plaintiff's claim. Instead, it includes instructions for submitting his application and information indicating receipt of the application. As we have discussed, these are non-promissory in nature, and insufficiently definite, specific or explicit to give rise to an expectation of the rights Plaintiff seeks to enforce. *See Avalos*, 2017-NMCA-082, ¶ 18.

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**SHAMMARA H. HENDERSON, Judge**