This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**PROGRESSIVE CASUALTY**
**INSURANCE COMPANY,**

Plaintiff-Appellee,

**v.**                                                                    **NO. 28,023,**
                                                                          **NO. 28,393**
**NANCY COLLEEN VIGIL**                            **consolidated**
**and MARTIN VIGIL,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Richard J. Knowles, District Judge**

O'Brien & Ulibarri, P. C.
Daniel J. O'Brien
Albuquerque, NM

for Appellee

Janet Santillanes
Olivia Neidhardt
James T. Roach
Albuquerque, NM

for Appellants

## MEMORANDUM OPINION

**GARCIA, Judge.**

Nancy Vigil and her son, Martin Vigil, (the Vigils) appeal from a partial summary judgment decision in favor of Progressive Casualty Insurance Company (Progressive). We must decide whether the district court properly awarded partial summary judgment to Progressive based upon the court's determination that the underlying insurance policy provided no coverage on the day of Martin Vigil's car accident. We hold that partial summary judgment should not have been granted. Therefore, we reverse and remand for further proceedings regarding the coverage issue. Reversal of the district court's partial granting of summary judgment also requires us to vacate the reimbursement damage award in favor of Progressive and the award of costs by the district court.

**STANDARD OF REVIEW**

We review the granting of summary judgment de novo. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Id.* We use the remedy of summary judgment with caution. *See Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶¶ 15-16, 123 N.M. 752, 945 P.2d 970. Because resolution on the merits is favored, we must "view the facts in a light most favorable to the party opposing the motion and draw all reasonable inferences in support of a trial on the merits." *Handmaker v.*

*Henney*, 1999-NMSC-043, ¶ 18, 128 N.M. 328, 992 P.2d 879.  Our description of the underlying facts conforms to this standard.

**BACKGROUND**

In the early hours of November 4, 2002, Martin Vigil was involved in a car accident.  One of the passengers in the vehicle was killed, and others were seriously injured.  The day of the accident, Nancy Vigil reported the accident to their automobile insurance carrier, Progressive.  The Vigils had been Progressive customers for a couple of years prior to the time of the accident.  Their insurance policy had covered three vehicles, including the vehicle involved in the accident, with liability limits of $100,000 per person and $300,000 per accident.

The dispute in this case relates to the effective dates of the Vigils' policy.  Both the declarations page and the routine billing statements specified that the policy was effective from May 3 through November 3, 2002.  However, subsequent events clouded the issue.

In late September 2002, Nancy Vigil contacted Progressive in order to modify their coverage, to reflect that one vehicle had been sold and another purchased.  Several days later, on October 3, 2002, Nancy Vigil called to make the monthly premium payment.  Progressive utilized both an automated system and customer service representatives to address billing and other policy questions.  During this

October 3 call, Nancy Vigil spoke with a customer service representative who indicated that the change in vehicles resulted in an increase in the monthly premium and that the date would change from the third to the fifteenth of each month. Nancy Vigil fully paid the new premium amount, $456.03, at that time. The Vigils later received a billing statement from Progressive, indicating that a premium payment was due by October 15, 2002, in the precise amount that Nancy Vigil had paid during the telephone call on October 3. One or two weeks later, the Vigils received another billing statement, indicating that a premium of $401.96 was due by November 3. On October 16, Nancy Vigil called to inquire about the billing statements because the customer service representative had previously indicated that the policy date would change to mid-month and because she had recently received a billing statement indicating that her payment had been due on October 15. Progressive's automated system indicated that the next premium was not due until November 15, 2002.

On November 4, 2002, Nancy Vigil called Progressive to report the accident and to seek assurance that their policy remained in effect. The customer service representatives with whom she spoke reiterated that the next premium was not due until November 15, 2002. The representative also confirmed that there had been no lapse in coverage. Nancy Vigil then stated that she wanted to pay the next premium at that time, even though the payment would be early. Not long thereafter, the Vigils

4

received new insurance cards and policy documents, reflecting a policy period from November 15, 2002 through May 15, 2003.

After the accident, Progressive changed its position with respect to coverage. Based principally on the effective dates reflected in the declarations page and billing statements, as well as two notices sent to the Vigils in late October specifying that further payment was due on or before November 3 in order to renew the policy, Progressive asserted that the Vigils' policy had lapsed prior to the accident on November 4. The Vigils disagreed with Progressive's revised position regarding coverage. The Vigils asserted that they were entitled to coverage primarily because the billing statements reflected premium due dates of October 15 and November 15 and because Progressive telephonically represented that no further payment was due until November 15 and that the policy had not lapsed.

When lawsuits were filed against the Vigils by the estate of one of the passengers and by another passenger who was seriously injured, Progressive elected to settle for the maximum allowable amount, paying $100,000 to each claimant. Progressive made these settlements under a reservation of rights.

Progressive filed the underlying action against the Vigils seeking a declaratory judgment ruling to establish that the policy had lapsed and that there was no coverage for the accident on November 4, 2002. Progressive also sought reimbursement from the Vigils for the $200,000 that it had paid in settlement. The Vigils filed a counter-

5

claim for declaratory judgment and also advanced a number of tort theories and claims under the Insurance Code and the Unfair Practices Act.

On the parties' cross-motions for summary judgment, the district court held as a matter of law that the Progressive policy had lapsed, and that there was no coverage for the November 4 accident. The court denied summary judgment with respect to Progressive's reimbursement claim, as well as the Vigils' remaining tort and statutory claims.

After a jury trial, Progressive was awarded the $200,000 that it sought in reimbursement and costs. The Vigils' various claims were rejected. This appeal followed.

**DISCUSSION**

The critical issue is determining whether insurance coverage was in effect on November 4, 2002. The Vigils claim that Progressive's conduct, specifically the billing statements reflecting mid-month due dates and the telephonic representations that coverage remained in effect and further payment was not due until November 15, was sufficient to give rise to a genuine issue as to the existence of coverage. Thus, they argue, the issue should have been presented to the jury, and the district court erred in granting summary judgment.

Although the district court did not state with particularity the basis for its award of partial summary judgment to Progressive on the coverage issue, the arguments

6

advanced in support of the motion were based principally on the clarity of the policy term. Progressive argues that the unambiguous policy provision reflecting a term of May 3 through November 3, 2002, which was reiterated on the monthly billing statements and two renewal notices, together with the Vigils' acknowledged failure to pay the renewal premium by November 3, eliminated any question of fact or law as to the existence of coverage at the time of the accident on November 4.

Progressive's argument would be more persuasive if the analysis of the policy coverage was strictly confined to the policy language. However, when confronted with questions of contract interpretation relating to the applicability of insurance coverage, the courts of this State are "no longer restricted . . . to language found within the four corners of an insurance policy." *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 13, 129 N.M. 698, 12 P.3d 960 (holding that in order to determine whether an ambiguity exists in a contract, the courts can look to extrinsic evidence such as "premiums paid for insurance coverage, the circumstances surrounding the agreement, the conduct of the parties, and oral expressions of the parties' intentions"). "In abandoning reliance only on the four-corners approach, courts are now allowed to consider extrinsic evidence in determining whether an ambiguity exists in the first instance, or to resolve any ambiguities that a court may discover." *Id.*

In this case, the extrinsic evidence revealed an ambiguity regarding coverage under the Vigils' policy. The declarations page and billing statements reflected a policy term ending on November 3, 2002, and Progressive mailed renewal notices indicating that payment was due by November 3. However, in the course of telephone calls to the automated system and to customer service representatives, Progressive represented to Nancy Vigil that no further payment was due until November 15, 2002. In addition, Progressive sent billing statements indicating that the premium payments were due on October 15 and November 15. Progressive also mailed the Vigils' insurance cards stating that their policy was effective from November 15, 2002 until May 15, 2003. Nancy Vigil therefore expected continuous coverage through November 15. Throughout her years as a Progressive customer, the payment of a monthly premium by its due date had resulted in the continuation of coverage for the next full month. As two expert witnesses explained in depositions, this relationship between payment and coverage would comport with historical and industry practices. Although we do not deem this evidence essential, we note that expert testimony of this nature is admissible, notwithstanding Progressive's protests. *See G & G Servs., Inc. v. Agora Syndicate, Inc.*, 2000-NMCA-003, ¶ 46, 128 N.M 434, 993 P.2d 751 (observing that while an expert may not testify generally concerning insurance law, expert testimony about insurance industry standards and practices may properly be admitted). Because the information supplied by Progressive in its mailings and in

8

response to Nancy Vigil's telephonic inquiries was conflicting, an ambiguity existed. This ambiguity directly bears upon the legal issue of the coverage period for the Vigils' policy.

"When interpreting insurance policies, as a matter of public policy, ambiguities are generally construed in favor of the insured and against the insurer. Thus, where the policy is found to be unclear and ambiguous, the court's construction of an insurance policy will be guided by the reasonable expectations of the insured." *Ponder*, 2000-NMSC-033, ¶ 26 (internal quotation marks and citation omitted). Although these principles suggest that the policy should be construed to uphold the Vigils' expectation of continuous coverage through November 15, 2002, we conclude that the coverage issue should not be resolved as a matter of law. Our determination in this regard is based principally on the existence of a dispute about the underlying facts. While Nancy Vigil has consistently asserted that the automated system and customer service representatives informed her that no further payment was due until November 15, Progressive has taken the position that representations of this nature were not made. Because the information provided by the automated system and by the customer service representatives is relevant to ascertaining what the reasonable expectations of the insured would have been, a jury should be permitted to resolve this factual dispute. *See Rummel*, 1997-NMSC-041, ¶ 15 ("If we find a genuine controversy as to any material fact, summary judgment will be reversed and the

9

disputed facts will be argued at trial."); *see also C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 509, 817 P.2d 238, 243 (1991) (stating that an initial determination of whether an ambiguity in a contract exists is a question of law and that resolving contractual ambiguities is a question of fact for the jury).

Even if the policy contained no ambiguity, the evidence is capable of supporting the Vigils' alternative theory by which coverage would be extended to the accident of November 4, 2002. "[C]ontracts for temporary insurance may be made by an agent orally," NMSA 1978, § 59A-18-22(A) (1984), and "[s]uch a contract for temporary insurance may vary or even contradict" written language found elsewhere among policy documents. *Ellingwood v. N.N. Invest. Life Ins. Co.*, 111 N.M. 301, 307, 805 P.2d 70, 76 (1991). This principle is based on "the realities of the insurance business," in which "it is to be expected that the average person will depend upon the agent to explain everything." *Id.* Accordingly, the courts "will not simply and mechanically charge the insured with the duty of reading and understanding insurance documents and then bar . . . recovery by a literal application of the terms and provisions of those documents." *Id.* If there is "evidence that the agreement of the parties is not integrated" in such documents, "but rather is the product of the representations of the agent that reasonably have been relied upon and accepted" by the insured, that evidence may be submitted to a jury notwithstanding conflicting written provisions. *Id.*

In this case, the evidence of the representations regarding the change in coverage to delete one vehicle and add another, followed by the repeated representations by the automated system and the customer service representatives about the November 15 premium date must be addressed at trial to determine whether the facts support a temporary contract of insurances, notwithstanding the existence of prior unambiguous policy language reflecting an end date of November 3, 2002. However, the ultimate success of such a claim depends upon apparent authority, a question which must be factually established by the Vigils and where disputed facts exist, must also be resolved by a jury. *See id.* at 306, 805 P.2d at 75.

Progressive makes several additional arguments on appeal. Progressive argues that none of the extrinsic evidence presented by the Vigils can be relied upon, either to establish ambiguity as to the policy term or to create a temporary contract of insurance, because that evidence related exclusively to the question of policy renewal. Progressive's renewal theory may be viable, but it is also plausible that the evidence, including the representations of the automated system and the customer service representatives, as well as the billing statements reflecting premium due-dates on October 15 and November 15, reflected an extension of coverage under the original policy. This is ultimately a question for the jury to resolve.

Progressive also argues that the extrinsic evidence should not be relied upon as a basis for reversing the district court's award of partial summary judgement because

11

the jury considered and ultimately rejected that evidence in connection with the Vigils' other claims. We are unpersuaded. Although Progressive asserts that the jury found Nancy Vigil not to be credible, we cannot speculate about the basis for the jury's verdict. *See generally State v. Wildgrube*, 2003-NMCA-108, ¶ 18, 134 N.M. 262, 75 P.3d 862 ("A reviewing court does not speculate about how the jury arrived at its verdict."). Furthermore, the Vigils' statutory and tort claims are analytically distinct from, and alternative to, the Vigils' coverage claim. This is illustrated by the court's specific instructions to the jury, which described the Vigils' alternative claims while simultaneously indicating that the Progressive policy provided no coverage. *Cf. Benavidez v. City of Gallup*, 2007-NMSC-026, ¶ 19, 141 N.M. 808, 161 P.3d 853 ("A party is entitled to instructions on all of his or her correct legal theories of the case if there is evidence in the record to support the theories."). Due to the analytical distinction, the jury's rejection of the Vigils' alternative theories cannot be regarded as a rejection of their coverage claim.

For the reasons previously stated, a jury after hearing all the evidence could reasonably and properly conclude that the Vigils were entitled to coverage under their policy. Therefore, the issue should have gone to the jury. *See Mark V., Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993) ("[I]f the proffered evidence of surrounding facts and circumstances is in dispute, turns on witness credibility, or is susceptible of conflicting inferences, the meaning must be resolved

12

by the appropriate fact finder."). The award of partial summary judgment must be overturned.

The Vigils make several arguments that Progressive did not have a cause of action against them for the claim of reimbursement. Because the Vigils' arguments will be moot if the jury finds there was insurance coverage for the accident, we decline to address the Vigils' arguments at this time.

**CONCLUSION**

For the foregoing reasons, we reverse the award of partial summary judgment with respect to the Vigils' claim to enforce the contract of the insurance and the related claim of bad faith for failure to provide insurance coverage. Because a finding of coverage would be inconsistent with the award of reimbursement and costs to Progressive, we vacate those awards as well. The uncontested jury verdict regarding the Vigils' claims for negligent misrepresentation, promissory estoppel, bad faith failure to conduct an investigation or evaluation of the claim, violation of the Unfair Practices Act, and violation of the Insurance Practices Act are affirmed. We remand for further proceedings and a new trial on the insurance coverage and reimbursement claims consistent with this opinion.

**IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

13

**WE CONCUR:**


_____
**CYNTHIA A. FRY, Chief Judge**


_____
**MICHAEL E. VIGIL, Judge**