**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2010-NMCA-061**

**Filing Date: March 30, 2010**

**Docket No. 29,241**

**ARENA RESOURCES, INC.**

        **Plaintiff-Appellee,**

**v.**

**OBO, INC.,**

        **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Gary L. Clingman, District Judge**

Cotton, Bledsoe, Tighe & Dawson, P.C.
Matt Catalano
Susan Richardson
Midland, TX

for Appellee

Davis, Gerald & Cremer, P.C.
Robert P. Crumpler, Jr.
Midland, TX

Reagan & Sanchez, P.A.
Mark Terrence Sanchez
Hobbs, NM

for Appellant

**OPINION**

**SUTIN, Judge.**

**{1}**     This case involves a dispute between two of three working-interest owners in an oilfield called the Seven Rivers-Queen Unit (the unit) located in Lea County, New Mexico. The parties' relationships were governed by a unit agreement and a unit operating agreement. The operating-interest owner, Arena Resources, Inc. (Arena), redeveloped the

unit and sought reimbursement from the other interest owners for the redevelopment expenses. Because Arena did not obtain approval from either of the two other interest owners as required under the parties' unit operating agreement, one of the other interest owners, OBO, Inc. (OBO), refused to pay for expenses associated with the unauthorized project. Arena sued OBO. The district court concluded that although Arena breached one or both of the agreements and that OBO did not, the project ultimately benefitted the unit and based on unjust enrichment, OBO was obligated for its share of the costs. OBO appeals. We hold that the court erred, and we reverse.

## BACKGROUND

**{2}** Arena, OBO, and the Evelyn Clay O'Hara Trust (the Trust) are the working-interest owners in the unit. Arena is the operator and owns about 71.1% participation or working interest in the unit. OBO owns about 25.8% and the Trust owns about 3.1% participation or working interest. The relationships of the working-interest owners are governed by a unit agreement and a unit operating agreement, both of which were effective as of January 1, 1973. In 2006 Arena sought the consent of the other working-interest owners to redevelop the unit by drilling new wells and by fracture stimulating some of the existing wells. The unit operating agreement required that any expenditures in excess of $15,000 be approved by the affirmative vote of at least two working-interest owners owning at least 70% of the voting interest. Arena proposed to redevelop the unit, and although OBO received various requests from Arena for consent to proceed with the redevelopment, OBO did not respond, did not sign any authorizations for expenditures in relation to the redevelopment, and did not agree to any expenditures in excess of $15,000.

**{3}** Arena initiated the redevelopment of the unit without having received consent from the other working-interest owners. Arena charged OBO's account for its proportionate share of the redevelopment expenses, just as it had done in its course of dealing with OBO before this redevelopment with respect to unit expenses. However, expenses exceeded revenues in OBO's account, and Arena demanded that OBO reimburse Arena for the claimed expenses owed which, at some point, amounted to approximately $1.8 million. OBO refused to pay, and this caused Arena to file a complaint and a second amended complaint against OBO claiming breach of the parties' agreements and seeking recovery of expenses and foreclosure on its contractual operator's lien against OBO's unit interest. The operative complaint averred that "[t]he lien may be enforced as a contractual lien, mortgage lien, constitutional lien, equitable lien, or any other lien afforded by the law and of the [S]tate of New Mexico." It also contained a general request for "all other proper relief available at law [or] in equity that the [c]ourt may be deemed just and proper in the matter." The complaint nowhere specifically indicated that Arena asserted a claim or sought recovery under or pursuant to any particular equitable doctrine or remedy.

**{4}** A little more than a month before trial, Arena moved for leave to file a third amended complaint based on new counsel's discovery that Arena had not raised a number of issues in its pleadings. Arena sought to add theories of ratification, affirmation, estoppel, co-tenancy, and waiver. These theories were aimed at overcoming various positions OBO asserted in a motion for summary judgment. The court denied Arena's motion for leave to file a third amended complaint. One week after moving to amend, Arena filed its first supplemental responses and designation of witnesses. Arena sought in part to inject into the

record theories it unsuccessfully sought to present through its proposed third amended complaint. When OBO objected to Arena's strategy, the court entered an order stating that Arena was precluded at trial from mentioning, referring to, arguing, and/or offering evidence on any matter, claim, count, and/or cause of action not included in Arena's second amended complaint. The court also disallowed Arena's witnesses designated as expert/fact witnesses. In the present appeal, Arena did not file a cross-appeal and does not otherwise claim on appeal that the court erred in the foregoing rulings.

{5}     Other than the references in its second amended complaint to "equitable lien" and "equity" as quoted earlier in this opinion, nothing filed by Arena specifically mentioned that it was asserting or seeking an equitable claim or lien or remedy based on theories of unconscionable OBO conduct, unjust enrichment, or unconscionable windfall or result. Furthermore, Arena does not indicate in its answer brief on appeal that it verbally asserted any such claim, right of recovery, remedy, or theory prior to or during trial. Arena's requested findings of fact and conclusions of law filed five days before trial made no mention whatsoever of equity, equitable lien or remedy, unconscionable OBO conduct, unjust enrichment, or unconscionable windfall or result.

{6}     The trial appears to have left the district court in somewhat of a quandary as to how to evaluate the merits of Arena's claims, given the apparent circumstance that Arena unilaterally proceeded with its redevelopment project without the consent required in the unit operating agreement, yet also given the apparent circumstance that the project produced oil and gas, enhanced the unit, and netted favorable present and future revenue consequences. After having heard testimony and having received exhibits on the merits of the claims asserted in Arena's second amended complaint, the court asked counsel for "a bit of guidance as to the appropriate remedy in this matter."

{7}     In responding to the court's request for guidance, Arena mentioned nothing expressly relating to any equitable claim, equitable lien or remedy, or any unconscionable conduct or unjust enrichment. The closest Arena came to possibly invoking equity was when it told the court that, if none of Arena's theories persuaded the court, it should at least "be allowed to recoup [its] expenses by netting until payout." Because of the uncertainty as to what was owed by or to it, OBO asked the court to order an accounting, including, in particular, Arena's attribution of revenue to expenses on the parties' joint account. OBO sought this relief under Rule 1-054(C) NMRA, pursuant to which OBO asserted that the court could "fashion a final judgment . . . that affords the complete relief [in] the case." The court stated that it did not think there was any question that Arena did not have proper authorization to proceed but also stated that that did not mean OBO got free oil wells. The court indicated that it would order an accounting and would then "fashion a remedy once that's done whereby OBO pays its part of this . . . project," stating further that "[n]either side is completely blameless in this matter." The court stated that OBO was "not going to get any free oil wells, and [they are] not [getting] free refraqs." Arena did not object to OBO's request for an accounting. At no time after the evidence was presented at trial did Arena move to amend its pleadings in any manner to conform to the evidence.

**{8}**    Two days after trial, on March 12, 2008, the court entered its findings of fact and conclusions of law.  The court concluded that Arena breached the unit agreement and/or the unit operating agreement when it failed to get the affirmative vote of either OBO or the Trust and then unilaterally embarked on the redevelopment program.  The court further concluded that Arena breached the unit agreement and/or the unit operating agreement when it netted the additional expenses of the redevelopment project against OBO's interest in the revenue of the unit.  The court denied Arena's breach of contract claim and Arena's claim seeking foreclosure of its operator's lien.  The foregoing conclusions and determinations and the court's findings that support these conclusions and determinations are not the subject of a cross-appeal and are not otherwise attacked or challenged by Arena on appeal.  At the same time, however, the court concluded that the unit had been improved, its oil and gas production had been increased, OBO's interest in the unit had been enhanced proportionately, OBO was not entitled to be unjustly enriched, and OBO had to pay its portion of Arena's redevelopment program from the production of the unit.

**{9}**    The court also ordered an accounting to determine if OBO was entitled to a credit for any overpayments that may have been made.  As for the status of the account without regard to the redevelopment issue, the court found that, historically, OBO was paying its share of unit operating expenses through "netting" by which the operator withheld and paid itself.  The court also found that "[i]n some months, OBO's unit oil production revenue was insufficient to pay OBO's unit expenses. . . .  In some months[,] it was sufficient and any excess was either applied to OBO's unpaid unit expenses or remitted to OBO."  The court rejected Arena's request for foreclosure of its operator's lien as to the alleged under-payments on the account because, although OBO may have been behind in payment on the account, the parties' business relationship constituted a course of dealing and Arena did not object to OBO's payment delinquencies until it filed its suit against OBO.  Arena has not cross-appealed from the order for an accounting.

**{10}**    The court's findings of fact and conclusions of law entered after trial contained the first mention by anyone in the proceedings of unjust enrichment.  The court specifically concluded that OBO was not entitled to be unjustly enriched notwithstanding Arena's breach of the unit agreement and/or the unit operating agreement.  This conclusion of unjust enrichment was based on findings and conclusions that Arena's redevelopment increased oil and gas production on the unit, improved the unit, and benefitted OBO's interest.

**{11}**    Concerned about the foregoing findings and conclusions relating to unjust enrichment, OBO filed a motion for judgment arguing that Arena never asserted a claim in unjust enrichment; that the case was not tried on that theory; that equity could not be invoked inconsistent with the parties' express contract, absent an unconscionable result; and that there existed no findings of fact or evidence presented by Arena that supported the court's conclusion that OBO was unjustly enriched.  In this motion for judgment and in a separate motion for consideration, OBO asked the court to consider the filed court-ordered accounting of the parties' account status and to award OBO a credit of approximately $2.2 million based on Arena's "netting . . . of unauthorized expenses from OBO's revenue interest on the [u]nit."  In a response, Arena argued that its second amended complaint sought foreclosure of its operator's lien and included a general request for equitable relief and that the pleading

4

satisfied any notice requirement and entitled the court to grant equitable relief based on unjust enrichment and an unconscionable windfall result.

**{12}**     Following a hearing on the parties' motions for judgment, the court, on October 3, 2008, entered a judgment requiring Arena to repay approximately $1.8 million to OBO. However, shortly afterward, the court entered an amended judgment that awarded approximately $1.8 million to Arena on the same grounds as those contained in its findings of fact and conclusions of law, namely, that the unit had been improved, its oil and gas production had been increased by Arena's redevelopment program and investment, OBO's interest in the unit had been enhanced proportionately, and OBO was not entitled to be unjustly enriched.  OBO's appeal from this amended judgment is now before this Court.

**DISCUSSION**

**{13}**     The critical issue in this case as to whether the district court was permitted to exercise its equitable powers is a question of law.  We review this issue de novo. *Smith & Marrs, Inc. v. Osborn*, 2008-NMCA-043, ¶ 19, 143 N.M. 684, 180 P.3d 1183.  We hold that the district court in the present case was not permitted to exercise its equitable powers to grant relief under an unjust enrichment theory of recovery.

**{14}**     Our Supreme Court has given us a scholarly recitation as to how to understand a claim seeking restitution based on unjust enrichment. "[R]estitution for unjust enrichment constitutes an independent basis for recovery in a civil-law action, analytically and historically distinct from the other two principal grounds for such liability, contract and tort." *Hydro Conduit Corp. v. Kemble*, 110 N.M. 173, 178, 793 P.2d 855, 860 (1990).  "Restitution based on unjust enrichment . . . is its sole preserve."  *Id.* (internal quotation marks and citation omitted).  Yet it "carries many labels, some of which may be analytically or theoretically distinct from others, but all of them having common root, at least historically, in the concept of an action sounding in contract."  *Id.*  In *Hydro Conduit*, in addressing whether a claim seeking restitution for unjust enrichment was a claim "based on contract" under a governmental immunity statute, the Court approved this description:

> Actions brought upon theories of unjust enrichment, quasi contract, contract implied in law, and quantum meruit are essentially the same.  Courts frequently employ various terminology interchangeably to describe that class of implied obligations where, on the basis of justice and equity, *the law will impose a contractual relationship* between parties, regardless of their assent thereto.

*Id.* at 179, 793 P.2d at 861 (internal quotation marks and citation omitted).

**{15}**     Our courts have indicated that restitution for unjust enrichment is equitable in nature. *See Albuquerque Nat'l Bank v. Albuquerque Ranch Estates, Inc.*, 99 N.M. 95, 102, 654 P.2d 548, 555 (1982) (recognizing the availability of equity to prevent unjust enrichment), *rejected on other grounds by J.R. Hale Contracting Co. v. United N.M. Bank at Albuquerque*, 110 N.M. 712, 799 P.2d 581 (1990); *Allsup v. Space*, 69 N.M. 353, 362, 367

5

P.2d 531, 537 (1961) (recognizing the equitable nature of a claim for restitution). Furthermore, we recognize two types of equitable liens, one based on agreement, and the other constituting a "remedial device, used to enforce a right to restitution in order to prevent unjust enrichment." *Title Guar. & Ins. Co. v. Campbell*, 106 N.M. 272, 277, 742 P.2d 8, 13 (Ct. App. 1987); *see Caldwell v. Armstrong*, 342 F.2d 485, 490 (10th Cir. 1965) ("An equitable lien is a creature of equity, is based on the equitable doctrine of unjust enrichment, and is the right to have a fund or specific property applied to the payment of a particular debt.").

**{16}** OBO asserts that the court's invocation of an unjust enrichment theory of recovery was improper because the parties' relationships were governed by an express contract, the unit operating agreement, and that unjust enrichment, as an equitable claim, may only be invoked in the absence of an express contract or when grossly inequitable circumstances require it. OBO notes that, as stated in *United Properties Ltd. v. Walgreen Properties, Inc.*, 2003-NMCA-140, ¶ 12, 134 N.M. 725, 82 P.3d 535, enforcement of an express contract is guided by "a long-standing backdrop of New Mexico law enforcing contractual obligations as they are written."

**{17}** We agree with OBO that the unit operating agreement was an express contract. We also agree that the contract was to be enforced as written in regard to contractual obligations of the parties unless the court determined that equity should override the express contract. "A court of equity . . . is bound by a contract as the parties have made it and has no authority to substitute for it another and different agreement, and should afford relief only where obviously there is fraud, real hardship, oppression, mistake, unconscionable results, and the other grounds of righteousness, justice and morality." *Id.* ¶ 31 (internal quotation marks and citation omitted); *Nearburg v. Yates Petroleum Corp.*, 1997-NMCA-069, ¶ 31, 123 N.M. 526, 943 P.2d 560 (stating that a court of equity should not interfere with a contract "unless the court concludes that the policy favoring freedom of contract ought to give way to one of the well-defined equitable exceptions, such as unconscionability, mistake, fraud, or illegality"); *see Restatement (First) of Restitution* § 107(1) (1937) ("A person of full capacity who, pursuant to a contract with another, has performed services or transferred property to the other or otherwise has conferred a benefit upon him, is not entitled to compensation therefor other than in accordance with the terms of such bargain, unless the transaction is rescinded for fraud, mistake, duress, undue influence or illegality, or unless the other has failed to perform his part of the bargain.").

**{18}** Arena's asserted claims were for breach of an express contract and to enforce a contractual lien right contained in the contract. In considering contract breach issues, Arena's contract claims backfired. The district court expressly determined that it was Arena that breached the contract and that Arena breached the contract in two separate ways. The court expressly determined that OBO did not breach the contract. The court entered no findings of fact or conclusions of law in regard either to overriding the policy favoring freedom of contract or to any well-defined equitable exception. Nor did the court enter a finding of fact or conclusion of law relating to establishment or enforcement of an equitable lien and otherwise made no mention of such a remedy. The court gave no explanation as to why it believed that it had the authority to disregard the parties' contract and to rely on

6

equity when, sua sponte, it injected the unjust enrichment theory of recovery into the case. *See Harbison v. Clark*, 59 N.M. 332, 336-37, 284 P.2d 219, 222 (1955) ("It requires no strained construction to hold that the defendant has pleaded an express agreement . . . . And it is the rule that one may not plead an express contract and recover on an implied one."). The district court nowhere mentioned the existence of evidence in the record to support the court's finding or evaluative judgment of "unjust," and we are not made aware of any such evidence. Further, the court entered no findings of fact that in any way supported its conclusion of unjust enrichment. The court supplied no basis for its invocation of the equitable unjust enrichment theory of recovery in the face of the parties' express contract. Further, to the extent that Arena asserts entitlement to an equitable lien, that remedy suffers from the same malady as Arena's unjust enrichment claim—it cannot be pursued in the face of the parties' express contract.

**{19}** We reject Arena's implication that the court evidently based its determination on unconscionable conduct by OBO's refusing to consent, taking no risk, paying no expenses, and reaping the benefits. Again, the court made no findings in regard to any particular unconscionable conduct on OBO's part, and Arena's characterization of the evidence is disputed by OBO. We will not attempt to comb the record for all of the evidence bearing on this question, which is Arena's unperformed job, nor will we attempt to resolve what appears to be a disputed factual issue. *Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶ 45, 146 N.M. 698, 213 P.3d 1127 ("[W]e will not comb the record to find evidence to support a party's position on appeal."), *cert. granted*, 2009-NMCERT-007, 147 N.M. 363, 223 P.3d 360; *Diaz v. McMahon*, 112 N.M. 788, 791, 819 P.2d 1346, 1349 (Ct. App. 1991) ("In reviewing an appeal from an order granting summary judgment, this [C]ourt does not resolve disputed issues of fact[.]"). "We are not obligated to search the record on a party's behalf to locate support for propositions a party advances or representations of counsel as to what occurred in the proceedings." *Muse v. Muse*, 2009-NMCA-003, ¶ 42, 145 N.M. 451, 200 P.3d 104 (filed 2008); *Murken v. Solv-Ex Corp.*, 2005-NMCA-137, ¶ 14, 138 N.M. 653, 124 P.3d 1192 ("[W]e decline to review . . . arguments to the extent that we would have to comb the record to do so."). Furthermore, Arena did not even submit requested findings of fact on this matter.

**{20}** Given that Arena is not entitled to recovery, an unanswered question is whether OBO is entitled to a credit to its account for the alleged unauthorized amounts charged against it by Arena. OBO requests this Court to remand with instructions to the district court to conduct further proceedings related to the accounting in order to grant OBO that relief. We render no opinion on whether OBO is entitled to such relief. However, we think it correct to remand for further proceedings to determine what relief, if any, is appropriate.

**CONCLUSION**

**{21}** The district court erred in invoking the unjust enrichment theory of recovery and in granting relief to Arena under that theory. We, therefore, reverse the court's amended judgment insofar as it grants relief to Arena, recites grounds for granting relief to Arena, or denies relief requested by OBO. We remand this case to the district court for further

7

proceedings in connection with the accounting to determine whether OBO is entitled to relief and, if so, in what amount.

**{22}   IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**ROBERT E. ROBLES, Judge**

**Topic Index for _Arena Resources Inc. v. OBO, Inc._, Docket No. 29,241**

| **CN** | **CONTRACTS** |
| CN-BR | Breach |
| | |
| **NR** | **NATURAL RESOURCES** |
| NR-OG | Oil and Gas |
| NR-RO | Royalties |
| | |
| **RE** | **REMEDIES** |
| RE-EQ | Equity |
| RE-UE | Unjust Enrichment |