# IN THE COURT OF APPEALS STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: August 30, 2018

**NO. A-1-CA-35762**

**MELINDA L. WOLINSKY,**

        Plaintiff-Appellant,

**v.**

**NEW MEXICO CORRECTIONS
DEPARTMENT,**

        Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Francis J. Matthew, District Judge**

Daniel M. Faber
Albuquerque, NM

for Appellant

Keleher & McLeod, P.A.
Zachary R. Cormier
Sean Olivas
Albuquerque, NM

for Appellee

## OPINION

**FRENCH, Judge.**

{1}     This case requires this Court to resolve whether the Fair Pay for Women Act (the FPWA) provides state employees the same right to pursue sex-based wage discrimination claims that persons employed by private employers possess. We answer this question affirmatively, and therefore reverse the order of the district court dismissing Plaintiff's case.

## BACKGROUND

{2}     Melinda Wolinsky (Plaintiff) sued her employer, the New Mexico Corrections Department (Defendant), for sex-based pay discrimination in violation of the FPWA. She alleged that her salary was approximately $8,000 less than that of a male employee also employed as a "Lawyer-A" in Defendant's Office of General Counsel. Defendant moved to dismiss under Rule 1-012(B)(1) NMRA and Rule 1-012(B)(6) NMRA. Defendant first argued that the FPWA does not apply to Defendant because, in providing a cause of action against an employer, the FPWA does not define "employer" to include the state and its agencies. Defendant contrasted the language of the FPWA with that of other employment-related statutes, such as the New Mexico Human Rights Act (the NMHRA), wherein the definition of "employer" expressly includes the state.

*See* NMSA 1978, § 28-1-2(A), (B) (2007). Second, Defendant argued that the "general grant of immunity" in the Tort Claims Act (the TCA) applies. *See* NMSA 1978, § 41-4-4(A) (2001) (stating that "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort" except as waived by the provisions of the TCA and other named statutes). The district court granted Defendant's motion to dismiss, concluding that Defendant is not subject to the FPWA.

**DISCUSSION**

**A.      Standard of Review**

{3}      Dismissals for lack of subject matter jurisdiction pursuant to Rule 1-012(B)(1) based on Defendant's claim of sovereign immunity and for failure to state a claim upon which relief can be granted pursuant to Rule 1-012(B)(6) are reviewed de novo. *Ping Lu v. Educ. Tr. Bd. of N.M.*, 2013-NMCA-010, ¶ 7, 293 P.3d 186; *Moriarty Mun. Schs. v. Pub. Schs. Ins. Auth.*, 2001-NMCA-096, ¶¶ 5, 17 131 N.M. 180, 34 P.3d 124. This appeal also involves interpretation of the FPWA. "Statutory interpretation is an issue of law, which we review de novo." *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105. We address Defendant's argument that Plaintiff's claim is barred by sovereign immunity and then turn our attention to the FPWA itself.

2

**B.    Common Law Sovereign Immunity Has Been Abolished in New Mexico**

**{4}**    In *Hicks v. State*, the New Mexico Supreme Court abolished common law sovereign immunity for tort actions. 1975-NMSC-056, ¶ 9, 88 N.M. 588, 544 P.2d 1153 (stating that "[c]ommon law sovereign immunity may no longer be interposed as a defense by the [s]tate, or any of its political subdivisions, in tort actions"), *superseded by statute as stated in Upton v. Clovis Mun. Sch. Dist.*, 2006-NMSC-040, ¶ 8, 140 N.M. 205, 141 P.3d 1259; *see Hydro Conduit Corp. v. Kemble*, 1990-NMSC-061, ¶ 13, 110 N.M. 173, 793 P.2d 855 (recognizing the abolishment of the common law doctrine of sovereign immunity); *Lucero v. Richardson & Richardson, Inc.*, 2002-NMCA-013, ¶ 7, 131 N.M. 522, 39 P.3d 739 ("The legal landscape changed in 1975, however, when our Supreme Court abolished common law sovereign immunity[.]"). In *Hicks*, our Supreme Court concluded that, in the context of tort claims, sovereign immunity was "causing a great degree of injustice[,]" to such an extent that it rendered the doctrine unjustifiable. 1975-NMSC-056, ¶ 10.

**{5}**    In response to *Hicks*, the Legislature enacted the TCA the following year. *See* NMSA 1978, §§ 41-4-1 to -27 (1976, as amended through 2015); *Smith v. Vill. of Corrales*, 1985-NMCA-121, ¶ 5, 103 N.M. 734, 713 P.2d 4 (describing the enactment of the TCA as a response to the decision in *Hicks*). The TCA expressly reinstated the state's sovereign immunity for tort claims, but then expressly waived

3

immunity in several specifically enumerated circumstances. *See* §§ 41-4-5 to -12; *Smith*, 1985-NMCA-121, ¶ 5; *see also Upton*, 2006-NMSC-040, ¶ 8 ("The TCA grants all government entities and their employees general immunity from actions in tort, but waives that immunity in certain specified circumstances.").

{6}     The same year that it enacted the TCA, the Legislature enacted another statute addressing the state's liability for contract claims. *See* NMSA 1978, § 37-1-23 (1976); *Hydro Conduit Corp.*, 1990-NMSC-061, ¶ 13. Section 37-1-23(A) grants immunity to the state in actions based on contract except for claims based upon a valid, written contract. *See Hydro Conduit Corp.*, 1990-NMSC-061, ¶ 17 (explaining that the legislative history of the statute indicates that the purpose of enacting Section 37-1-23 "was to reinstate the sovereign immunity which had been abolished by *Hicks* . . . , subject to certain exceptions[,]" including "the acceptance of liability for claims based on valid written contracts").

{7}     Our Supreme Court has since read *Hicks* as "generally abolish[ing] the common law doctrine of sovereign immunity *in all its ramifications*, whether in tort or contract or otherwise[.]" *Torrance Cty. Mental Health Program v. N.M. Health and Env't Dep't*, 1992-NMSC-026, ¶ 14, 113 N.M. 593, 830 P.2d 145 (emphasis added); *see also State ex rel. Hanosh v. State ex rel. King*, 2009-NMSC-047, ¶ 10, 147 N.M. 87, 217 P.3d 100 ("Although [*Hicks*] specifically challenged the state's common[]law immunity from actions in tort, no one should doubt the

4

broader scope of what this Court has previously described as *Hicks's* sweeping abolition of sovereign immunity.") (internal quotation marks and citations omitted); *Methola v. Cty. of Eddy*, 1980-NMSC-145, ¶ 9, 95 N.M. 329, 622 P.2d 234 (describing the holding in *Hicks* broadly as abolishing judicially recognized sovereign immunity in New Mexico). The breadth of *Hicks* is bolstered by the fact that the "opinion itself prefaced its holding by citing to a variety of New Mexico opinions and not just cases sounding in tort." *Hanosh*, 2009-NMSC-047, ¶ 11.

{8}    Thus, the existence and extent of the state's immunity post-*Hicks* now depends upon the Legislature. "The common law now recognizes a constitutionally valid statutory imposition of sovereign immunity, and such immunity must be honored by the courts where the [L]egislature has so mandated." *Torrance Cty.*, 1992-NMSC-026, ¶ 16 (alteration, internal quotation marks, and citation omitted); *see e.g. Hydro Conduit Corp.*, 1990-NMSC-061, ¶ 22 (holding that a claim against the state for restitution based on unjust enrichment was barred by sovereign immunity as reinstated by Section 37-1-23). The availability of the state's defense of sovereign immunity does not depend on whether the Legislature provided a *waiver* of immunity within a statute. Rather, the state may defend a suit based on sovereign immunity only insofar as the Legislature has *invoked* immunity within or otherwise in connection with the statute under which the plaintiff brings its suit against the state. *See Torrance Cty.*, 1992-NMSC-026, ¶ 23. Sovereign immunity

now exists only "as implemented by statute or as might otherwise be interposed by judicial decision for sound policy reasons." *Id.* ¶ 14; *see also Hanosh*, 2009-NMSC-047, ¶ 7 (discussing *Hicks* and noting that "courts are very much able to expand, contract, or eliminate altogether common[]law sovereign immunity, *subject of course to the power of the state legislature to codify immunity in its place*") (emphasis added); *Smith*, 1985-NMCA-121, ¶ 5 ("In New Mexico, sovereign immunity is a statutory creation."); *Marrujo v. N.M. State Highway Transp. Dep't*, 1994-NMSC-116, ¶ 24, 118 N.M. 753, 887 P.2d 747 ("The right to sue the government is a statutory right and the [L]egislature can reasonably restrict that right.").

**C.     The FPWA**

{9}     Plaintiff's claim here arises solely under one state statute: the FPWA. Defendant asserts sovereign immunity, "not under federal law or principles of federalism," but "under what [Defendant] perceives to be vestigial remains of our state common[]law sovereign immunity." *Hanosh*, 2009-NMSC-047, ¶ 9. However, common law sovereign immunity no longer exists. Therefore, we must determine whether the Legislature invoked the state's sovereign immunity in the FPWA. Alternatively, even in the absence of an express statutory invocation, we must determine whether the Legislature intended the state to be subject to the

6

statute. *See Lucero*, 2002-NMCA-013, ¶¶ 3, 7, 9 (recognizing the need to determine whether a statutory cause of action applies to government entities).

**1.      The FPWA Does Not Expressly Invoke Sovereign Immunity**

{10}      When the Legislature invokes the state's sovereign immunity, it does so expressly. Other statutes that invoke the state's sovereign immunity—namely, the TCA and Section 37-1-23—demonstrate a clear invocation of immunity. The TCA straightforwardly provides that "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort." Section 41-4-4(A). Similarly, in Section 37-1-23(A), the Legislature clearly invokes the state's immunity for contract claims by stating that "[g]overnmental entities are granted immunity from actions based on contract[.]" The FPWA does not contain any similar language, and it does not refer to sovereign immunity at all. *See* NMSA 1978, §§ 28-23-1 to -6 (2013) (lacking language addressing the state's immunity from suits alleging violation of the conduct prohibited). We therefore conclude that Defendant has no sovereign immunity from liability under the TCA or the FPWA. We next examine the language of the FPWA to determine whether the Legislature intended the state to be a liable party.

**2.      The State Is an "Employer" Subject to Claims Brought Under the FPWA by Public Employees**

{11}      The FPWA prohibits an "employer" from discriminating between employees on the basis of sex by paying wages to employees at a rate less than the rate that

7

the employer pays wages to employees of the opposite sex for equal work. Section 28-23-3(A). The FPWA defines "employer" as "a person employing four or more employees and any person acting for an employer." Section 28-23-2(E). The FPWA does not, however, define "person."

{12}  In the absence of contradictory language in the FPWA, the provisions of the Uniform Statute and Rule Construction Act (the USRCA) apply. *See* NMSA 1978, § 12-2A-1(B) (1997). "The [USRCA] applies to a statute enacted or rule adopted on or after the effective date of that act unless the statute or rule expressly provides otherwise, the context of its language requires otherwise[,] or the application of that act to the statute or rule would be infeasible." *Id.* The Legislature enacted the FPWA sixteen years after the passage of the USRCA. Section 28-23-1; Section 12-2A-1. The FPWA does not provide that the USRCA does not apply; the context of the FPWA does not require that the USRCA does not apply; and the application of the USRCA to the FPWA is feasible. Therefore, the USRCA supplies the meaning of terms not defined in the FPWA.

{13}  The USRCA defines "person" as "an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture or any legal or commercial entity[.]" NMSA 1978, Section 12-2A-3(E) (1997). A "legal entity" is "[a] body, other than a natural person, that can function legally, sue or be sued, and make decisions through agents." *Black's Law Dictionary* 1031

8

(10th ed. 2014). The state, an entity capable of suing and being sued, is, therefore, a legal entity that falls within the definition of "person" and thus is subject to suit for violating the terms of the FPWA. *See, e.g.,* NMSA 1978, § 10-16C-4 (2010) (providing a cause of action against the state); *State v. Davisson*, 1923-NMSC-045, ¶ 11, 28 N.M. 653, 217 P. 240 (explaining that the board of county commissioners is entitled to sue for sums due to the county).

**{14}** Finally, we address Defendant's argument that the Legislature must not have intended the USRCA's definition of "person" to include the state because the USRCA separately defines "state." *See* § 12-2A-3(E), (M). Defendant reasons that if "person" included the state, there would have been no need to provide a definition for "state." We are not persuaded by this argument. The USRCA defines "state" as "a state of the United States, the District of Columbia, the Commonwealth of Puerto Rico or any territory or insular possession subject to the jurisdiction of the United States." *Id.* All items within the definition of "state" are geographic locations. Section 12-2(A)-3(M). The items within the definition of "person" are different in kind; all but one of the items in the definition is a body or an entity created by law. As a result, the definition of "state" is not superfluous. It simply defines the geographic locations that are included by use of the term "state" on its own in a statute, whether or not the statute also uses the term "person."

**CONCLUSION**

{15}    We conclude that the Legislature intended for the state to be subject to claims brought under the FPWA and we reverse the order of the district court granting Defendant's motion to dismiss.

{16}    **IT IS SO ORDERED.**

_____
**STEPHEN G. FRENCH, Judge**

**WE CONCUR:**

_____
**M. MONICA ZAMORA, Judge**

_____
**HENRY M. BOHNHOFF, Judge**

10